J-S20029-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: B.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: B.W. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1634 WDA 2018 |

Appeal from the Order Entered October 15, 2018
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s):  CP-02-AP-0000029-2018

| | | |
|---|---|---|
| IN RE: M.M.-W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: B.W. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1635 WDA 2018 |

Appeal from the Order Dated October 15, 2018
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s):  CP-02-AP-0000030-2018,
CP-02-AP-30-2018

| | | |
|---|---|---|
| IN THE INTEREST OF: C.M.-W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: B.W. | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1636 WDA 2018 |

Appeal from the Order Entered October 15, 2018
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s):  CP-02-AP-0000031-2018

J-S20029-19

BEFORE: GANTMAN, P.J.E., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED JUNE 19, 2019**

B.W. ("Mother") has appealed from the order involuntarily terminating her parental rights as to her children, B.W., M.M.-W., and C.M.-W. ("Children"). We conclude that the trial court did not abuse its discretion in terminating Mother's parental rights and affirm.

B.W. was born in June 2008, M.M.-W. was born in November 2013, and C.M.-W. was born in January 2015.[1] N.T., 7/20/18, at 58. The Allegheny County Office of Children, Youth and Families ("CYF") became involved with Mother in August 2015 due to Mother's drug dependency issues. *Id.* at 59-61. The Children were not adjudicated dependent at that time. However, on September 1, 2016, the Children were removed from Mother's care due to Mother's ongoing drug use and mental health instability. *Id.* at 61, 64; Order of Adjudication dated September 20, 2016. At that time, Mother was hospitalized on an involuntary mental health commitment due to severe drug withdrawal. N.T., 7/20/18, at 64. B.W. and M.M.-W. were placed with their Maternal Grandmother and C.M.-W. was placed with his Maternal Great-Aunt. *Id.* at 108-109; Order of Adjudication dated September 20, 2016. The

_____

[1] G.C. is the father of B.W. and D.M. is the father of M.M.-W., and C.M.-W. Both fathers did not appeal the court's order terminating their parental rights. Mother is the only appellant in this appeal.

- 2 -

Children were adjudicated dependent on September 20, 2016 pursuant to 42 Pa.C.S. § 6302(1).[2]

After the Children were adjudicated dependent, Mother left her psychiatric hospitalization against medical advice. N.T., 7/20/18, at 70-71. On September 22, 2016, Mother was incarcerated and ultimately sent to Federal prison in West Virginia on a charge of conspiracy to commit a felony involving 405 stamp bags of heroin. Findings of Fact at ¶20. She was incarcerated in West Virginia until April 25, 2017 and then returned to Pennsylvania. *Id.* at ¶21. On May 14, 2017, Mother was arrested on a warrant for failure to appear and returned to Federal prison in West Virginia. *Id.* at ¶22. While in prison, Mother did not have visits with the Children, but did maintain contact with the Children through phone calls and letters. N.T., 10/11/18, at 67-69. She was released to a halfway house on January 30, 2018. Findings of Fact at ¶22. On June 17, 2018, Mother was released from the halfway house and placed on parole. *Id.* at ¶23. When Mother was in the halfway house, she had unsupervised visits with the Children and has continued to have unsupervised

---

[2] Per this subsection, a dependent child is a child who "is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk, including evidence of the parent's, guardian's or other custodian's use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk."

visitation with them since her release from the halfway house. *Id.* at ¶¶24-25.

On January 30, 2018, CYF filed a Petition for Involuntary Termination of Parental Rights. The trial court conducted hearings on the Petition for Involuntary of Parental Rights on July 20, 2018 and October 11, 2018. CYF presented the testimony of Stacey Dyrwall, CYS caseworker since March 4, 2017, and Dr. Eric Bernstein, who had conducted psychological evaluations of Mother, the Children, and the caregivers and issued two reports ("CYF Exh. 1"). Mother also testified on her own behalf at the termination hearings.

Ms. Dyrwall testified that CYF initially established the following Family Service Plan ("FSP") goals for Mother: address her drug and alcohol issues, visit with the Children, resolve her criminal matters and cooperate with CYF. N.T., 7/20/18, at 65-66. The additional goals of obtaining housing, attending parenting classes, and addressing her mental health were later added to Mother's FSP goals. N.T., 10/11/18, at 6-7. At the termination hearing, Ms. Dyrwall stated that she believed that Mother had not addressed her drug and alcohol issues. N.T., 7/20/18, at 95. Specifically, Ms. Dyrwall testified that since Mother had been home from prison, she did not show up for any drug screens requested by CYS and had not been engaged in any drug treatment. N.T., 10/11/18, at 11, 45. Further, Ms. Dyrwall testified that Mother did not have any plans to follow up on drug treatment since she was released from prison. N.T., 7/20/18, at 87, 95-97. In terms of visitation, Ms. Dyrwall stated that although there were no problems with the visits when they occurred,

visitation was not consistent with the Children during the course of this case. *Id.* at 92-93. Further, Ms. Dyrwall stated that Mother does not currently have housing. N.T., 10/11/18, at 8. Ms. Dyrwall also testified that there has also been no compliance by Mother regarding her mental health treatment. *Id.* at 26-27, 45.

Ms. Dyrwall further testified that Mother has not shown CYS that she is able to parent all three Children for extended periods of time while remaining sober. *Id.* at 25, 28. Ms. Dyrwall noted that the Children have remained in care for the entire time since their removal in September 2016 and that the Children need permanency. N.T., 7/20/18, at 108-09; N.T., 10/11/18, at 29-30. She stated that B.W. and M.M.-W. are placed with their Maternal Grandmother and are doing well in her care, while C.M.-W. is placed with his Maternal Great-Aunt and is also doing well in her care. N.T., 7/20/18, at 108-109. The Children have remained with those respective caregivers throughout the entirety of this case. *Id.* at 109. Ms. Dyrwall further testified that the Children are bonded to their respective caregivers and the caregivers are meeting all of the Children's needs. *Id.* at 109-110; N.T., 10/11/18, at 46-49. B.W. has straight A's in school and is active in dance. N.T., 7/20/18, at 109. Maternal Grandmother ensures that M.M.-W.'s special needs are being addressed. *Id.* at 109-111. Maternal Great-Aunt has addressed C.M.-W.'s speech issues and early development. *Id.* at 109. Ms. Dyrwall testified that the Children have a very loving relationship with their caregivers. N.T.,

10/11/18, at 46, 48-49. The caregivers also ensure that the siblings have visits with each other. *Id.* at 48.

Dr. Bernstein testified at the termination hearings and stated that he conducted evaluations of Mother, the Children, and the caregivers. N.T., 7/20/18, at 6; CYF Exh. 1. Dr. Bernstein testified that Mother acknowledged having a history of drug and legal issues that resulted in separation from her Children. N.T., 7/20/18, at 20. He stated that Mother further recognized that she had a lack of consistent contact with her Children. *Id.* Mother told him that she smoked marijuana for seven years and "K-2" (synthetic marijuana) on and off for three years. *Id.* at 21; CYF Exh. 1. Mother said that she achieved sobriety in May 2017. CYF Exh. 1. Dr. Bernstein diagnosed Mother with Cannabis-Related Disorder and Anxiety Disorder and recommended that she attend a dual diagnosis program for her substance abuse and mental health issues. N.T., 7/20/18, at 22; CYF Exh. 1.

Dr. Bernstein believed that to consider Mother in a full-time parenting role was premature, given that she was restricted to incarceration for much for the Children's lives, was less than one year abstinent from drug use, and had not obtained housing. N.T., 7/20/18, at 23-25; CYF Exh. 1. Specifically, Dr. Bernstein testified:

> I called into question the mother's stability, that she's living, or was living, at least, in a three-quarter home of some sort and less than a year, at that time at least, abstinent from drug use. And that's drug use, mind you, of close to 7 years or more, granted. So at least within addiction literature she remained at risk for relapse, whether it be with marijuana

or K-2 or some other substance, and she was still in recovery…

And again, I questioned how she would in the midst of recovery as well transition into independence, essentially gain housing and try to find work, and she would otherwise manage for all of her children's needs, one of whom with special needs and about whom she did not seem to well know with respect to his autism, or at least did not share.

And as we all know, obviously a child requires considerable, if not special attention and supervision, and patience as well. And how she would manage with such a challenge is itself in serious question, given marijuana abuse is an attempt to avoid the intensity of emotions, to escape from feelings of overwhelmed [sic], anxiety, or other moods that are too difficult to confront. And now that she is past that, will she be able to handle three or four children,[3] as well as her own difficulties or cravings, if at all, not to reuse.

N.T., 7/20/18, at 23- 25.

While Dr. Bernstein recognized that Mother had made positive strides, he could not overlook the difficulties of instability and her significant absence from the Children's lives. *Id.* at 25. He noted that there has not been enough opportunity to fully and accurately measure Mother's level of change. CYF Exh. 1. Dr. Bernstein supported CYF with moving forward with the termination of Mother's parental rights. *Id.* He opined that the Children would not be deleteriously impacted if Mother's parental rights were terminated. N.T., 7/20/18, at 25, 49-50; CYF Exh. 1. On the contrary, he stated that to reunify the Children with Mother would likely create considerable challenge and even potential distress for the Children, especially for M.M.-W. and C.M.-W., who

---

[3] Mother has a fourth child, an infant, who was not the subject of this termination.

have spent most of their lives with their respective caregivers. CYF Exh. 1. Dr. Bernstein also noted that Maternal Grandmother supports post-adoption contact between Mother and the Children. N.T., 7/20/18, at 18-19.

Dr. Bernstein further testified that Mother has a limited bond with the Children due to the fact that Mother has been absent for much of the Children's lives and has not fulfilled a parenting role. *Id.* at 23. He stated that the Children are, however, well-adjusted in their respective caregivers' care, bonded to them, and have achieved stability in their care. *Id.* at 14; CYF Exh. 1. Dr. Bernstein testified:

> When looking at a child's immediate and long-term needs it's important that they have a sense of stability and a caretaker upon whom they can rely for their day-to-day needs and who's in a position to be available and consistent and offer appropriate levels of care. In this case the mother has not fulfilled that role, given her own personal circumstances. And as a result, the bond she shares with the children is limited.

N.T., 7/20/18, at 23.

Mother testified at the termination hearing. Mother admitted that she had a history of using drugs, but she stated that she had been sober since May of 2017. N.T., 10/11/18, at 75-76. She testified that she was confident in her ability to stay sober and she did not want to participate in any therapy or support programs to address her history of drugs and mental health. *Id.* at 76-77. Mother further testified that she is working on obtaining housing. *Id.* at 70-71. She also stated that she had been employed as a home health aide for two and a half weeks. *Id.* at 77-79. Mother testified that she declined visits

with the Children while she was incarcerated because the visits were through a glass window and she did not want to confuse the Children as to why they could not be with her physically. *Id.* at 67-69. Mother stated that she did maintain contact with the Children through phone calls and letters at least twice per week while she was incarcerated. *Id.* at 68-69. Mother stated that she now has unsupervised visits with the Children two to three times per week, including some weekends. *Id.* at 82-84. Mother acknowledged that she was still on probation at the time of the hearing. *Id.* at 101.

Lastly, counsel for the Children put the Children's positions on the record. Counsel stated that B.W., age ten at the time of the hearing, clearly indicated that her preference was to be adopted by Maternal Grandmother. *Id.* at 121. Counsel said that M.M.-W. and C.M.-W., who were almost five years old and three years old, respectively, at the time of the hearing, did not fully appreciate what it meant to be adopted due to their age. *Id.* However, counsel stated that M.M.-W. emphatically stated that he wished to remain with Maternal Grandmother and C.M.-W. expressed a preference to remain with Maternal Great-Aunt. *Id.* at 121-22.

On October 15, 2018, the court granted CYF's Petition for Involuntary Termination of Parental Rights as to Mother and set forth its findings on the record and in an Order. The court found that CYF presented clear and convincing evidence that grounds for termination existed as to Mother pursuant to 23 Pa.C.S.A. § 2511(a)(2), (5), and (8) and that termination best

served the needs and welfare of the Children pursuant to 23 Pa.C.S.A. §
2511(b). Mother filed a timely notice of appeal.

On appeal, Mother has raised the following two issues:

> 1. Did the trial court abuse its discretion and/or err as a
> matter of law in granting the petition to involuntary
> terminate Mother's parental rights pursuant to 23 Pa.C.S. §
> 2511(a)(2), (5), and (8)?
>
> 2. Did the trial court abuse its discretion and/or err as a
> matter of law in concluding that CYF met its burden of
> proving by clear and convincing evidence that termination
> of Mother's parental rights would best serve the needs and
> welfare of the child pursuant to 23 Pa.C.S. § 2511(b)?

Mother's Br. at 19.

Mother contends that the trial court erred in terminating her parental
rights because she had made significant progress toward reunification with
the Children. *Id.* at 23. Specifically, Mother maintains that she was clean of
drugs since May of 2017, employed, had unsupervised visits with the Children,
and was close to obtaining housing for her and her Children. *Id.* at 21. Mother
argues that the mere fact that her progress occurred after CYF filed its Petition
for Involuntary Termination of Parental Rights should be insufficient as a
matter of law to support termination under 23 Pa.C.S. § 2511(a)(2), (5), and
(8). *Id.* at 27-28. Mother further contends that the trial court erred in
concluding that CYF met its burden in presenting evidence that termination of
Mother's parental rights would be in the Children's best interests. *Id.* at 22.

A party seeking to terminate parental rights has the burden of
establishing grounds for termination by clear and convincing evidence. *In re*

- 10 -

***Adoption of K.C.***, 199 A.3d 470, 473 (Pa.Super. 2018). Clear and convincing evidence means evidence "that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue." ***Id.*** (internal quotation marks and citation omitted in ***In re Adoption of K.C.***).

When we review termination of parental rights cases, we "accept the findings of fact and credibility determinations of the trial court if they are supported by the record." ***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013) (quoting ***In re Adoption of S.P.***, 47 A.3d 817, 826 (Pa. 2012)). "If the factual findings have support in the record, we then determine if the trial court committed an error of law or abuse of discretion." ***In re Adoption of K.C.***, 199 A.3d at 473. A trial court decision may be reversed for an abuse of discretion "only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." ***In re Adoption of S.P.***, 47 A.3d at 826.

Our Supreme Court has explained the reasons for applying an abuse of discretion standard of review in termination of parental rights cases:

> [U]nlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the

> court's legal conclusions are not the result of an error of law or an abuse of discretion.

*Id.* at 826-27 (citations omitted).

Termination of parental rights is controlled by Section 2511 of the Adoption Act. *In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007). Under Section 2511, the trial court must engage in a bifurcated analysis prior to terminating parental rights:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*Id.* (citations omitted).

In the present case, the trial court terminated Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), (5), and (8) and 2511(b) of the Adoption Act. In order to affirm the termination of parental rights, this Court need only agree with the trial court's decision as to any one subsection of Section 2511(a), as well as Section 2511(b). *In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). Here, we affirm that the trial court properly terminated Mother's parental rights pursuant to sections 2511(a)(8) and (b) which provide:

**(a) General rule.**--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

…

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

…

**(b) Other considerations.**--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(8), (b).

Section 2511(a)(8) of the Adoption Act "sets a 12–month time frame for a parent to remedy the conditions that led to the children's removal by the court." *In re A.R.*, 837 A.2d 560, 564 (Pa.Super. 2003). Once the 12–month period has been proven, the court must next determine whether the conditions that led to the child's removal continue to exist. *Id.* "As a result, the relevant inquiry in this regard is whether the conditions that led to removal have been remedied and thus whether reunification of parent and child is imminent at

the time of the hearing." *In re I.J.*, 972 A.2d 5, 11 (Pa.Super. 2009). "Termination under Section 2511(a)(8) does not require the court to evaluate a parent's current willingness or ability to remedy the conditions that initially caused placement or the availability or efficacy of Agency services." *In re Z.P.*, 994 A.2d 1108, 1118 (Pa.Super. 2010). Furthermore, we are instructed by Section 2511(b) that we may not consider any effort by the parent to remedy the conditions described in subsection (a)(8) "if that remedy was initiated after the parent was given notice that the termination petition had been filed." *Id.* at 1121.

Here, it is undisputed that the Children were removed from Mother's care for at least 12 months at the time of the termination hearing; indeed, the Children were in care for an uninterrupted period of 25 months. N.T., 10/15/18, at 7-8; Findings of Fact at ¶39. Therefore, we next focus our inquiry on whether the conditions which led to the Children's removal from Mother's care continued to exist at the time the trial court terminated Mother's parental rights.

As noted above, the Children were removed from Mother's care due to her drug use and mental health issues. Mother self-reports that she has been sober since May of 2017. She has been recently employed, has unsupervised visitation with her Children, and is working toward obtaining housing. While we commend Mother's efforts, Dr. Bernstein found that Mother is in early recovery from drug addiction and is at risk for relapse. She has refused to attend Narcotics Anonymous or any other support program. Mother also has

not addressed her mental health issues. The trial court recognized that although Mother had begun to make efforts to parent her Children since she was released from prison, her efforts to achieve stability occurred well after CYF filed the Petitions for Termination of Parental Rights on January 20, 2018. N.T., 10/15/18, at 11-12. The court found:

> There is no doubt that Mother has been cooperative and is working on her goals and is making progress. However, Mother's progress is recent – after her release from incarceration and return to Allegheny County in June of 2018, nearly 6 months after the filing of the TPR petitions. Given the history of this case and the length of time that the Children have been in care, I would need to see sustained sobriety and stability for an extended period outside the confines of incarceration…

> I agree with Dr. Bernstein who said, "While I recognized the positive strides, I could not overlook the difficulties of instability and the significant absence from the children's lives…Having been restricted to incarceration and more recently a three-quarter home, there has not been enough opportunity to fully and accurately measure her level of change. How she will ultimately adjust independent of any oversight is in question."

Findings of Fact at ¶¶43-44.

Although Mother has made progress, "progress towards reunification is…irrelevant to a subsection (a)(8) analysis." *In re I.J.*, 972 A.2d at 12; *see also In re S.H.*, 879 A.2d 802, 806-807 (Pa.Super. 2005) (concluding termination under 2511(a)(8) appropriate because "reunification could not be contemplated until Mother maintained a sober lifestyle in the outside community for at least one to two years"). This Court has explained:

> We recognize that the application of Section (a)(8) may seem harsh when the parent has begun to make progress toward resolving the problems that had led to removal of her children…However, by allowing for termination when the conditions that led to removal of a child continue to exist after a year, the statute implicitly recognizes that a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future. Indeed, we work under statutory and case law that contemplates only a short period of time, to wit eighteen (18) months, in which to *complete* the process of either reunification or adoption for a child who has been placed in foster care.

*In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa.Super. 2006) (emphasis in original).

Because Mother failed to remedy the situation that led to the Children's removal from her care, and, as discussed below, termination of parental rights would best serve the needs and welfare of the Children, the trial court properly concluded that the requirements of section 2511(a)(8) were satisfied.

Having determined that CYS proved by clear and convincing evidence the requirements of section 2511(a)(8), we next turn to the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. The focus under Section 2511(b) is not on the parent, but on the child. *In re Adoption of R.J.S.*, 901 A.2d at 508. Pursuant to Section 2511(b), the trial court must determine "whether termination of parental rights would best serve the developmental, physical and emotional needs and welfare of the child." *In re*

*C.M.S.*, 884 A.2d 1284, 1286 (Pa.Super. 2005). This Court has explained that "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into [the] needs and welfare of the child." *Id.* at 1287. The trial court "must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." *Id.* Importantly, "[t]he mere existence of an emotional bond does not preclude the termination of parental rights." *In re N.A.M.*, 33 A.3d 95, 103 (Pa.Super. 2011). Instead, the trial court "must examine the status of the bond to determine whether its termination would destroy an existing, necessary and beneficial relationship." *Id.* Further, "[c]ommon sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." *In re T.S.M.*, 71 A.3d 251, 268 (Pa. 2013).

Here, the trial court found that although Mother has a bond with the Children, that bond is not a parent-child bond, but rather is a limited bond. The record supports the trial court's findings. Dr. Bernstein testified that Mother did not have a primary bond with the Children due to her absence from the Children's lives and the fact that she has not fulfilled a parenting role. He further opined that the Children would not be deleteriously impacted if Mother's parental rights were terminated. On the contrary, Dr. Bernstein believed that to reunify the Children with Mother would likely create considerable challenge and even potential distress for the Children.

Dr. Bernstein and Ms. Dyrwall both testified that the Children are closely bonded to their caregivers and look to them for all of their developmental, physical and emotional needs. There was specific testimony that the Children are well-adjusted in their current homes and are thriving. Further, B.W., who was ten years old at the time of the termination hearing, expressed a clear preference to remain in the care of Maternal Grandmother. In sum, the Children have achieved stability in their respective caregivers' care. Accordingly, we conclude that the record supports the trial court's decision that CYS proved by clear and convincing evidence that termination of Mother's parental rights was in the Children's best interests. Having perceived no abuse of discretion, we affirm the trial court's decree granting the Petition for Termination of Mother's Parental Rights.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/19/2019

- 18 -